**Yolanda ROBERTSON and Marque Hart, Plaintiffs,**

**v.**

**ALL AMERICAN QUALITY FOODS, INC., Defendant.**

**CIVIL ACTION NO. 1:15–CV–1629–AT**

United States District Court, N.D. Georgia, Atlanta Division.

Signed 03/31/2017

Marcus G. Keegan, Keegan Law Firm, LLC, Atlanta, GA, for Plaintiffs.

Stephen Patrick Morris, Rodney Glenn Meadows, Meadows & Macie, P.C., Stockbridge, GA, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

### I. OVERVIEW [1]

This employment discrimination case is before the Court on the Magistrate Judge's Final Report and Recommendation ("R & R") [Doc. 57]. The Magistrate Judge's R & R recommends that Defendant's Motion for Summary Judgment (Doc. 43) be granted in full. Plaintiffs have filed Objections to the R & R (Doc. 64),

---

1. The Court provides the factual summary below merely to orient the reader. The summary as well as the Statement of Facts contained in Section IV does not represent the Court's actual factual findings in this case. The Court considers the evidence in the light most favorable to the Plaintiffs.

and Defendant has filed a Response to the Objections (Doc. 66). As discussed below, the Court **ADOPTS IN PART** the Magistrate Judge's R & R [Doc. 57] and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment [Doc. 43].

Plaintiffs Yolanda Robertson and Marque Hart are African–American former employees at a Food Depot grocery store located in Stone Mountain, Georgia. Approximately fifteen employees, including Plaintiffs, worked in the store's meat department. (Hart Depo., Doc. 43–6 at 82.) Defendant is the owner of the Food Depot grocery chain. Hart, a meat cutter, worked in the same store as Robertson, a meat wrapper.

Within the span of a few months in 2014, Robertson was disciplined and later fired. Hart was also fired around the same time in 2014. Defendant allegedly based these decisions on Robertson's violation of various company rules and Hart's insubordinate conduct. Plaintiffs claim that these disciplinary and firing decisions were racially discriminatory and retaliatory, and each subsequently brought claims of race discrimination and retaliation under 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") against Defendant. Defendant moved for summary judgment on all of their claims.

The initial incidents that led to both Plaintiffs' disciplinary actions occurred on May 10, 2014. The Magistrate Judge summarizes the testimony of the events involving Robertson that day in the R & R as follows:

> On May 10, 2014, Ms. Robertson was exiting her work area in the meat department to go to the restroom, and she pulled her cell phone out of her pocket to read a text message. (Robertson Dep. at 25–27). As she was looking at her phone, the store manager, Rick Davis, approached her and told her that she was not supposed to be on her phone and to put her cell phone away. Ms. Robertson responded that she was not on her cell phone, that she was checking a text. Mr. Davis then attempted to explain the cell phone rules to Ms. Robertson by saying, "Hey, let me tell you the phone rules," but Ms. Robertson just continued to walk away from Mr. Davis. Mr. Davis then told her to "come here" and tried to get her attention by calling, "Hey, hey," to which Ms. Robertson responded, "My name is not 'hey,' it's Yolanda. I don't address you as [hey], I address you as Mr. Rick." (*Id.* at 26–27). Ms. Robertson put her cell phone back in her coat pocket, and instead of proceeding to the restroom, she walked back to her work station in the meat department. Because Mr. Davis believed that Ms. Robertson was violating the cell phone use policy and had "flat out refused to do what [he] asked her to do," Mr. Davis followed her back to the meat department and told her, "Your black ass is going home today." Instead of leaving, Ms. Robertson just resumed working at her wrap machine. (Doc. 43–12, Deposition of Rick Davis ["Davis Dep."] at 33–34; Doc. 43–13 at 30; Robertson Dep. at 26–27). Mr. Davis then asked, "Where's Tony," referring to the meat department manager, Tony Walker. Mr. Davis got on the intercom and told Mr. Walker to come to the back of the store. When Mr. Walker arrived, Mr. Davis told him, "This little bitch is going home today. She's getting suspended for three days." (Robertson Dep. at 27). After speaking with Mr. Davis, Mr. Walker told Ms. Robertson to go

home for the day. (*Id.* at 30). When Ms. Robertson went to the time clock to punch out, she saw that she was already clocked out. (*Id.*).

After exiting the building, Ms. Robertson sat in her car and called Tim Collins, the meat department supervisor (who was out of the store that day), to tell him what had happened. (Robertson Dep. at 31–32). She told Mr. Collins that on her way to the bathroom, she had pulled out her phone to read a text, and Mr. Davis had told her she could not be on the phone, so she put it back in her pocket. Mr. Collins reminded Ms. Robertson that Defendant has a policy that employees cannot be on their phone. Ms. Robertson explained, "I wasn't on my phone, I was reading a text." (*Id.* at 32). Mr. Collins told her that he had already spoken to Mr. Davis about the incident, and that she should clock back in until Mr. Collins arrived to the store so he could get both sides of the story. Mr. Collins instructed Ms. Robertson to draft a written statement about the incident for him to review. (Collins Dep. at 65–66).

When Ms. Robertson re-entered the store and tried to return to her work station, Rick Davis told the meat department manager, Tony Walker, that Ms. Robertson needed to go home and that she was suspended for three days. At some point, Mr. Davis threatened to call the police if she did not leave the building. (Robertson Dep. at 29–30). Mr. Walker then told Ms. Robertson to go home for the day. Ms. Robertson exited the building, went back to her car, and called the area manager, Allen Buchanan, on her cell phone. (*Id.* at 31–33). In describing the incident to Mr. Buchanan, Ms. Robertson told him that the store manager, Rick Davis, was unprofessional when he told her that her "black ass was going home today," and she thought his conduct amounted to discrimination. (*Id.* at 33). Ms. Robertson told Mr. Buchanan that Mr. Davis had also announced in front of her entire department that "this little bitch is going home today," which made her feel "degraded." (*Id.*). She explained that she had not said anything back to Davis and had just kept walking to her work station. She asked why she was being punished and told to go home. Mr. Buchanan replied that Tim Collins was on his way to the store to speak with her and get some statements from employees, and that Mr. Collins would handle it. Ms. Robertson responded, "Okay." (*Id.* at 33–34).

Ms. Robertson testified that after Mr. Collins arrived at the store, she re-entered the store to speak with him. (Robertson Dep. at 33–36). In lieu of providing a written statement to Tim Collins as he had requested, Ms. Robertson gave him a written statement that Gail Ware, a coworker in the meat department, had prepared with Ms. Robertson's verbal assistance. (*Id.*; Doc. 43–8 at 102). The statement was addressed to Tim Collins from "The Meat Department Employees," and it stated the following:

On May 10, 2014 inside the meat department, the Store Manager Rick Davis called Ms. Yolanda Robinson [sic] a bitch. His statement was as followed [sic]. This little bitch is going home today. You are suspended for (3) days. This was very unprofessional on Mr. Rick Davis, the store manager. These are the following employees that heard this statement.

(Doc. 43–8 at 102). The statement was signed by Gail Ware, Marque Hart (the

other plaintiff in this case), and three other meat department employees. (*Id.*). Ms. Robertson did not sign the statement.

(Doc. 57 at 8–12) (footnotes omitted).

Somewhat later that day, on May 10, 2014,[2] after Collins had arrived to address the situation involving Robertson, Hart was in the meat department discussing Davis's treatment of Robertson with a coworker.[3] Hart believed that Collins overheard him, given that Collins was standing nearby and asked what Hart was saying. Hart told Collins he thought that the store managers treated employees unfairly and applied different sets of rules. Hart claims that Collins then told him repeatedly to "shut up," pushed him, and physically blocked his path to return back to work. In contrast, Collins claims that Hart was actually the one who was verbally aggressive towards him and improperly sought to return to work. Collins immediately fired Hart for insubordination following their encounter on May 10th.

Both Plaintiffs subsequently filed charges of race discrimination with the EEOC. Hart filed his charge on July 14, 2014. Robertson filed her charge a few days earlier on July 10, 2014, and Defendant received notice of it in the mail on July 14, 2014. On July 13th, Robertson did not show up for her work shift, and she called Kamal Singletary at the meat department to report her absence. Robertson claims Singletary was an assistant manager—whereas Defendant claims he was not a manager—and she therefore asserts that she complied with the work rule to report absences in advance to store managers. Collins learned of Robertson's absence on the morning of July 14th. He fired her for failing to show up for work and for failing to report to a manager about it. Before her termination, Robertson had received a written employee "no call/no show" warning notice on May 21, 2014 from her meat department manager, Tony Walker, regarding her unexcused absence on May 18, 2014. Robertson testified that she was aware as of May 21st that she was required to contact a manager if she would be absent and that any subsequent work rule violation could result in her suspension or termination.[4]

Robertson and Hart compare Defendant's treatment of each of them to Defendant's treatment of Justin Dover, a Caucasian meat cutter employed at the same store. Dover had been reported for multiple violations related to absenteeism, tardiness, and even job abandonment. He also had at least two incidents of insubordination but was not ultimately fired for either one. In one incident, Dover strenuously argued with Davis about a work rule regarding employee purchases. Davis sent him home, but Dover then spoke with Collins about it, and Collins let him return to work the next day. In another later incident, after Davis had told Dover not to cuss on the sales floor or else he would be fired, Dover hotly said something to this

---

2. The record is not clear as to precisely how much time had elapsed from the time Collins arrived at the store to follow up on the circumstances surrounding Robertson's disciplinary incident (and Davis's alleged abusive remarks) to the time when Collins interacted with Hart that same day. But the sequence of events suggests that no more than a few hours at very most had elapsed.

3. Both Davis and Collins are Caucasian.

4. The warning notice on May 21st listed two previous written warnings for attendance violations, one on May 16, 2012 and one on December 30, 2013.

effect: "Shit, fuck, damn. I don't care. Send me home." Davis fired Dover for insubordination, but according to Hart, Collins nevertheless allowed Dover the opportunity to return to work afterward. So Dover once again returned to his job as a meat cutter.

## I. LEGAL STANDARD

 A district judge may accept, reject, or modify a magistrate judge's R & R after conducting a careful review of the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). The district judge reviews for clear error those portions of the R & R that the parties have not objected to. The district judge also reviews and determines de novo those portions of the R & R that any party has objected to. In other words, the district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

Given the range of Plaintiffs' objections discussed below, the Court has reviewed the summary judgment record here on a de novo basis.

## II. PLAINTIFFS' OBJECTIONS CONCERNING ROBERTSON'S CLAIMS

For purposes of the discussion in Sections II and III, the Court relies on the R & R's general description of the incidents at issue on pages 5–25. (Doc. 57.) Plaintiffs' objections regarding Robertson's claims pertain to the following issues and findings of the Magistrate Judge:

**Robertson's discrimination claim:** Plaintiffs assert that the Magistrate Judge ignored certain material facts and inappropriately weighed the evidence in favor of the moving party, Defendant, when assessing whether Robertson had established a prima facie case of race discrimination. For example, the Magistrate Judge found that Robertson and Dover had different job duties (a meat wrapper and a meat cutter respectively) and that this, as well as other differences in their offending conduct, made them improper comparators. But Plaintiffs point out that the Magistrate Judge failed to address a portion of the testimony from Collins, the meat department supervisor, regarding the application of work rules to employees. Specifically, Collins testified that he did *not* believe work rules should apply differently to meat cutters and meat wrappers. (Collins Depo., Doc. 43–15 at 190.) Plaintiffs therefore argue it is an undisputed fact that Defendant had no intention of applying its work rules differently to Robertson and Dover, and therefore, the Magistrate Judge should have found Dover to be a valid comparator for Robertson, regardless of whether meat cutters performed somewhat greater responsibilities or were harder to hire.

Relatedly, Plaintiffs also object to the finding that Dover was not a valid comparator for Robertson based on their attendance violations. Dover had a record of one "no-call/no-show" violation, two unexcused absences, and one unexcused tardiness violation, in addition to job abandonment. (Doc. 43–11 at 56; Collins Depo., Doc. 43–15 at 166–67.) Robertson had a record of three "no-call/no-show" violations, one of which Plaintiffs dispute as stated above. Dover was not disciplined for his conduct, other than Defendant issuing him disciplinary write-ups and Collins verbally counsel-

ing him on occasion. (Doc. 43–11 at 56–57; Collins Depo., Doc. 43–15 at 172–73, 175–79.) Plaintiffs contend that the Magistrate Judge improperly distinguished between Dover's unexcused absences and Robertson's "no-call/no-show" violations, which the Magistrate Judge then used as a basis for finding they were not valid comparators.

Plaintiffs allege that the Magistrate Judge also erred in factually finding that Collins had fired Robertson for a legitimate non-discriminatory reason. Specifically, the Magistrate Judge based this finding on Robertson's failure to show up for work and to properly report her absence according to the store's work rules, because she had not called in to a manager at work beforehand to obtain clearance for her absence. Plaintiffs argue that the Magistrate Judge did not consider the factual dispute regarding whether Robertson actually violated a work rule. Robertson testified she had called in and reported her absence to Kamal Singletary who, in her experience, had functioned as an assistant manager in the store. Plaintiffs also argue that the Magistrate Judge did not properly consider Collins's testimony that he assumed Robertson had told him she had called Singletary about not coming to work, and that this undermines Collins's articulated justification for discharging her. In light of this evidence, Plaintiffs object to the finding that Defendant proffered a legitimate non-discriminatory reason for firing Robertson.

**Robertson's retaliation claim:** Plaintiffs object that the Magistrate Judge did not consider all material evidence regarding whether Defendant fired Robertson in retaliation based on her complaints of race discrimination—which she expressed via an EEOC charge and via oral and written complaints presented on the job (i.e., making phone calls of complaint to management as to Davis's conduct and verbal abuse when she was suspended by Davis and handing Collins the written statement from other meat department employees). For example, Plaintiffs cite to the testimony of Defendant's Human Resources Director that she assumed Robertson was still employed at the time she notified Collins of Robertson's EEOC charge on July 14, 2014. (Chapman Depo., Doc. 43–10 at 62–63.) Plaintiffs argue this evidence could allow a jury to infer that Collins knew about the EEOC charge before he fired Robertson, and therefore his firing decision was retaliatory. Plaintiffs also cite to Robertson's internal complaints to Collins and Buchanan on May 10, 2014, the day that Davis suspended her. They argue that her May 10th complaints were "sufficiently proximate" in time to the ultimate firing decision on July 14th for a jury reasonably to infer retaliation.

### III. PLAINTIFFS' OBJECTIONS CONCERNING HART'S CLAIMS

Plaintiffs' objections regarding Hart's claims pertain to the following issues and findings of the Magistrate Judge:

**Hart's discrimination claim:** Plaintiffs raise several objections regarding the Magistrate Judge's conclusion that Dover is not a proper comparator for Hart. First, Plaintiffs maintain that the Magistrate Judge improperly construed and weighed the facts about Hart's and Collins's confrontation in Defendant's favor and failed to consider the evidence in the light most favorable to Plaintiffs. Plaintiffs point to the R & R's description of the confrontation as involving shoving and pushing, whereas Hart had testified that there was no such physical confrontation between

them and that he was attempting to avoid Collins's aggressive interaction. (Hart Depo., Doc. 43–6 at 42, 45–46; Hart Declaration, Doc. 45–5 at 3–4.)

Plaintiffs also object that the Magistrate Judge found that Hart and Dover were terminated by different managers for dissimilar conduct and therefore could not be deemed proper comparators. Plaintiffs assert this isn't true because the evidence shows that Collins was the ultimate decision-maker in determining whether both Hart and Dover would keep their meat cutter jobs after they had engaged in similar conduct that management deemed insubordinate. Plaintiffs similarly object to the Magistrate Judge's finding that both Hart and Dover were offered the opportunity to return to work and therefore that Dover was not treated more favorably. Plaintiffs contend there are legitimate factual disputes that undermine this finding. Specifically, Hart testified that Collins never told him he would not be fired if he apologized. (Hart Depo., Doc. 43–6 at 85.) Based on these and other related errors, Plaintiffs assert that the Magistrate Judge improperly found that Dover was not a valid comparator, and that there was insufficient evidence to create triable issues regarding whether Defendant's reasons for firing Hart were a pretextual cover for racial discrimination and retaliation.

**Hart's retaliation claim:** Plaintiffs object that the Magistrate Judge did not properly consider whether evidence surrounding Hart's internal employment complaint provided sufficient evidence for a jury to infer that his firing was retaliatory and in violation of Title VII. Plaintiffs point to the evidence discussed directly above as well as to evidence of Collins's handling of the employee complaint arising on May 10, 2014. Before Collins arrived at the store, Hart testified that he had signed a statement that was addressed to Collins and that concerned Robertson's unfair treatment. He further relayed that he believed this statement would be presented to the EEOC on behalf of Robertson. (Hart Declaration., Doc. 45–5 at 2; Hart Depo., Doc. 43–6 at 88.) Hart also testified that when Collins arrived at the store, Hart was talking with another employee about the unfair and discriminatory treatment of Robertson. (Hart Declaration, Doc. 45–5 at 3; Hart Depo., Doc. 43–6 at 44–45.) In Hart's view, Collins overheard this conversation and then proceeded immediately to aggressively question him and then terminate him on the spot. (Hart Declaration, Doc. 45–5 at 3–4; Hart Depo., Doc. 43–6 at 45–46, 86–87.)

## IV. STATEMENT OF THE FACTS

Plaintiffs do not object to the Magistrate Judge's statement of the facts in the Facts Section of the R & R at pages 5–25. Their objections primarily pertain to the Magistrate Judge's factual findings in the Discussion Section of the R & R and the Magistrate Judge's alleged weighing of these findings. The Court therefore adopts the Facts Section of the R & R except insofar as the Court finds that the Magistrate Judge did not include certain material facts and weighed evidence that should have been submitted for jury review and determination as discussed more fully below.

In summarizing Dover's incidents of insubordination, the Magistrate Judge did not include certain material facts. Specifically, she did not include the fact that Hart had observed the incident in early 2013 when Dover argued with Davis about a new work rule for employee purchases at the store. (Hart Declaration, Doc. 45–5 at

5.) Davis described Dover as "raising his voice and yelling," and Hart described the "back-and-forth" with Davis as "heated." (Hart Depo., Doc. 43–12 at 23; Hart Declaration, Doc. 45–5 at 5.) The Magistrate Judge also did not include or consider record evidence regarding Dover's subsequent communication with Collins about this same incident. Dover had drafted a statement about his exchange with Davis and his communication with Collins, and Defendant apparently obtained this statement from Dover as part of its regular conduct of its human resources functions and records. (Hart Depo., Doc. 43–16 at 60.) Dover stated that he contacted Collins after Davis sent him home for the day, and Collins learned from Dover that he "got into it with [Davis] and [ ] he screwed up ...." (Id.; Collins Depo., Doc. 43–15 at 165–66.) Collins said he did not remember whether he allowed Dover to return to work the next day (Collins Depo., Doc. 43–15 at 166), but Dover said Collins told him he could return to work the next day. (Doc. 43–16 at 60.) And Collins acknowledged in his deposition the incident and that he treated meat cutters more leniently to retain them in the store's employment. (Collins Depo., Doc. 43–15 at 164–66, 191–92.)

In addition, the Magistrate Judge did not include the fact that Hart also observed the second incident later in 2013, where Dover cussed at Davis. (Hart Declaration, Doc. 45–5 at 5; Hart Depo., Doc. 43–6 at 66, 83–84.) Hart testified that he observed: Davis instructing Dover not to speak loudly or curse; Dover responding by saying something to the effect of "shit, fuck, damn"; and then Davis firing him.

(Hart Depo., Doc. 43–6 at 83–84.) He also testified that he saw Dover back at work the following day. (Id. at 84.)[5] The Court considers these facts about Dover's incidents of insubordination in the Analysis Section below.

## V. ANALYSIS

### A. Legal Overview

■■■ The Court has carefully reviewed the summary judgment record in this matter. The Court has considered the Magistrate Judge's assessment of the evidence that confined the R & R to the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "However, establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.... Rather, the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). As the Eleventh Circuit has held, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir.

---

5. The Court notes that Hart offered additional double hearsay testimony about what he learned from Dover's conversation with Collins, which is evidence that cannot be presented in an admissible form under Fed. R. Civ. P. 56(c). (Hart Depo., Doc. 43–6 at 84.) The Court has not considered that evidence in its analysis.

2011)) (footnote omitted); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (holding that the circumstantial evidence required to prove a case of discrimination under Title VII is "flexible and depend[s] on the particular situation").

Based on this same principle, the Eleventh Circuit in *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012) held that an employment discrimination plaintiff "does not have to show a comparator if she can show enough non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination." *See also Smith*, 644 F.3d at 1328 ("[T]he plaintiffs failure to produce a comparator does not necessarily doom [her] case.")[6]; *Ash v. Tyson Foods*, Inc., 546 U.S. 454, 456, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (holding that hiring manager's use of the word "boy" when referring to the individual plaintiffs properly could be considered as evidence of discriminatory animus); *Ross v. Rhodes Furniture*, 146 F.3d 1286, 1291–92 (11th Cir. 1998) (recognizing that supervisor's racist remarks constituted circumstantial

evidence along with other evidence that might lead a reasonable jury to disbelieve Defendant's explanation for firing the plaintiff and conclude that the firing was based on unlawful discrimination)[7]; *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361–63 (11th Cir. 1999) (finding manager's comment reflecting an age-based image of desirable applicants for hire "may evince evidence of the state of mind of the decision-maker at the time" of plaintiff's termination and, along with other circumstantial evidence, properly support denial of summary judgment).

The Court finds that the Magistrate Judge erred to the extent that the R & R here was effectively confined to a narrow application of the *McDonnell Douglas* legal analysis of the evidence and failed to consider the full range of circumstantial evidence in the two Plaintiffs' cases that might potentially allow a jury to infer racial discrimination on the part of Defendant's relevant decision makers.[8]

### B. Robertson's Discrimination Claim

The Court has closely reviewed the entire record in assessing whether Robertson

---

**6.** Similarly, the Eleventh Circuit has recognized that "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d at 1079, 1087 (11th Cir. 2004); *see also Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575–576, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("[T]he facts necessarily will vary in Title VII cases and the specification of the prima facie proof required … is not necessarily applicable in every respect for different factual situations.").

**7.** On the other hand, isolated discriminatory remarks that are not made in temporal or other connection with a challenged employment decision and proximate in time to the employment actions at issue are not viewed as probative of discriminatory animus. *See, e.g., Rojas v. Florida*, 285 F.3d 1339, 1343 (11th

Cir. 2002) (isolated comment of supervisor unrelated to decision to terminate plaintiff was insufficient to establish "a material fact on pretext"); *Floyd v. Fed. Exp. Corp.*, 423 Fed.Appx. 924, 932–33 (11th Cir. 2011) (finding African American manager's testimony about white manager's racial remarks not deemed probative of discrimination because white manager's statement was made at a time "too remote from the decision to terminate" the plaintiff).

**8.** The R & R, at the conclusion of the section addressing each Plaintiff's discrimination claim, merely includes one sentence referencing *Hamilton* and stating that no circumstantial evidence was presented that raises a reasonable inference of intentional discrimination.

has raised a material triable fact issue that could properly be presented to a jury for resolution with respect to her race discrimination claim. While the Court finds that the R & R correctly determined that Dover was not a valid comparator to Robertson under governing law, the Magistrate Judge did err in finding that Robertson had failed to set forth sufficient evidence to establish a prima facie case as to her three-day suspension or that Robertson had failed to introduce evidence that was relevant to proof of her race discrimination claims.

The Court starts with the cell phone incident and Davis's racially and sexually charged directive that Robertson immediately leave the store premises. Simultaneous to Davis's decision to suspend Robertson due to her conduct involving her cell phone, Davis commented to her, "Your black ass is going home today." He then called her immediate supervisor, Walker, in her presence and told Walker, "This little bitch is going home today. She's getting suspended for three days." In short, Davis's remarks were related to

the employment decision at issue and may be considered as probative circumstantial evidence of discriminatory animus. Although this evidence does not constitute direct evidence of discrimination under governing Eleventh Circuit law,[9] Davis's comments and the abusive form of his directive that Robertson leave the store, in conjunction with his imposition of a three-day suspension, are important to consider.[10] Consistent with *Hamilton* and the authority reviewed above, the Court finds that this evidence creates a reasonable inference of intentional discrimination for purposes of establishing Robertson's prima facie case as to the three-day suspension, even in the absence of valid comparator evidence.

The same reasoning, however, does not apply as to Robertson's establishment of a prima facie case of her termination claim, even though the termination was not remote in time to the suspension. Collins—not Davis—was the decision-maker as to Robertson's termination, and there is no record evidence suggesting that Davis recommended or was involved with the termination. Thus, the Court finds that dispa-

---

**9.** Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee" and that, "if believed, proves [the] existence of [a] fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.* 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and quotation omitted). The alleged statement must not only suggest, but also, "if believed," prove that the challenged employment action was taken based on the discriminatory motive. *Id.* In the instant case, Davis's statements clearly indicate his discriminatory attitude but, "if believed," do not prove that he initiated Robertson's suspension based on his animus. The Court notes that while Robertson in her objections contends that the Magistrate Judge improperly weighed the evidence, she does not argue that the "direct evidence" standard of proof should have been applied,

shifting the burden of proof to the Defendant. *See Lee v. Russell County Bd. of Education*, 684 F.2d 769, 774 (11th Cir. 1982).

**10.** The Court parenthetically notes that the legal analysis of the "black ass" comment in footnote 8 of the R & R is in error. The Magistrate Judge states that the single use of a racial slur or epithet is generally insufficient to establish a Title VII claim of discrimination, and she cites to two cases as support for this statement: *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). But both of these cases are inapposite because they are addressing hostile work environment claims, for which separate and distinct standards of proof apply.

rate treatment comparator evidence or other probative circumstantial evidence of motive would still be required to establish Robertson's prima facie case of her termination claim. Nevertheless, the Court analyzes both the suspension and termination claims together, assuming for the sake of this analysis that Plaintiff also established a prima facie case for her termination claim.

 Comparator evidence may be considered relevant in assessing pretext or rebuttal just as it is for establishment of a prima facie case. *Rioux v. City of Atlanta, GA*, 520 F.3d 1269, 1279–82 (11th Cir. 2008). The Magistrate Judge found that Dover was not a valid comparator for Robertson regarding her May 10th suspension or her July 14th termination. This determination led in turn to the R & R finding that Robertson had neither established a prima facie case nor punctured Defendant's legitimate non-discriminatory reasons for the suspension and termination actions, even assuming a prima facie case had been established. The Eleventh Circuit requires that Robertson and the employee to which she compares herself be "similarly situated in all relevant aspects" in order to be valid comparators. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Robertson and Dover were not similarly situated. As a meat cutter, Dover worked under different circumstances than a meat wrapper like Robertson. Meat cutters were more skilled and received more training since they operated the bandsaws, whereas meat wrappers could not operate the bandsaws. (Collins Depo., Doc. 43–15 at 61–62.) The most senior meat cutter would also stand in for the meat department manager when he or she was absent, by directing other staff on what to do and reporting back go management. (*Id.* at 63–

64.) The store had a harder time finding and replacing meat cutters compared to meat wrappers for these reasons. (*Id.* at 191–92.) In sum, meat cutters were more skilled and in greater market demand.

Although Collins testified that the store policies applied to meat wrappers and meat cutters alike (*Id.* at 190), as Plaintiffs emphasize in their Objections, he then went on to explain how, in practice, he gave meat cutters "an opportunity" and "another chance" if they messed up since the store had "a specific need for a specific skill set for a meat cutter." (*Id.* at 191.) Thus, the difference between Dover and Robertson is not merely one of nominal job titles. The difference is also how the store disciplined them and applied its policies to them because of their job titles. *See, e.g., Gaines v. Johnson*, 44 F.Supp.3d 1169, 1182 (N.D. Ala. 2014) (finding employees not similarly situated in part because one employee "had skills and knowledge no one else at [the company] had," and the other employee "was merely experienced at pool construction (knowledge others at [the company] had)"); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984) ("[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown") (internal citations omitted). Because Dover and Robertson are not similarly situated "in all relevant aspects," a comparison of their treatment by Defendant does not raise an inference of discrimination. *Holifield*, 115 F.3d at 1562.

 While Robertson has introduced evidence of Davis's racial animus in support of her suspension discrimination claim, she has not submitted sufficient other evidence—whether comparator evidence or other circumstantial evidence—to

rebut Defendant's business reasons for imposing the suspension. Robertson challenges whether the cell phone rule should have been applied when she was just checking her messages on her way to a bathroom break—but she does not actually dispute that she was looking at her phone while still working on company time in the store. And in reality, the heart of her factual challenge here is based on Defendant's differential, lax treatment of Dover, including his return to work the next day after heatedly arguing with Davis about application of a work rule. Because Robertson's comparator evidence is flawed for the reasons already discussed, it does not establish pretext or additional circumstantial evidence that would create a triable issue as to her suspension claim. The Court finds Davis's alleged comments completely offensive. Still, though the comments show Davis's underlying discriminatory attitudes, they do not on their own, without any other supportive evidence, create a viable jury question as to her suspension claim under the specific facts presented here. Robertson's suspension claim cannot survive without other relevant circumstantial evidence that tends to either undermine Davis's non-discriminatory explanation for imposing the suspension or indicate that race discrimination motivated Davis's suspension decision.

*Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Rioux*, 520 F.3d at 1277–78 (11th Cir. 2008).

■ As to her termination, Robertson particularly objects that she did not in fact violate the "no call/no show" rule, and therefore Collins's justification for firing her on this basis was pretextual. But the pretext inquiry centers on an *employer's* perception of the employee's conduct, not on the employee's perception of her own conduct, absent other evidence that suggests these reasons are not worthy of belief or other circumstantial evidence of discrimination. And regardless of whether or not Robertson actually violated the "no call/no show" rule, she introduced no evidence that would permit a reasonable fact finder to reject or not believe Collins's explanation for terminating her on this basis. After being fired, Robertson testified that she only asked Collins for her separation notice. (Robertson Depo., Doc. 43–8 at 45.) She did not suggest in her testimony that she told Collins about her call to Kamal Singletary or that she thought she had not violated the rule since she perceived Singletary as an assistant manager when she called him. And Collins did not testify otherwise.[11]

The Court has reviewed all other evidence tendered in support of Robertson's

---

11. Plaintiffs cite to Collins's deposition, where he testifies that he "assumes" Robertson told him about calling Singletary but that he doesn't remember exactly. (Collins Depo., Doc. 43–15 at 113:18–24.) This statement is still insufficient to show that Collins's reason for firing Robertson was pretextual, i.e., that his determination that she had violated the rule was belied by other facts or circumstances. At most, this statement shows that Collins knew Robertson had called Singletary beforehand; it does not show that he knew Robertson thought Singletary was an assistant manager or that she had called in ab-

sences to him at some point and therefore, that her reporting her absence to him on July 13th could not be fairly treated as a violation of the rule. The Court additionally notes that Singletary himself denies he functioned in the role of a manager for purposes of administration of the attendance policy. (Singletary Depo., Doc. 43–9 at 15–16.) When Robertson called Singletary on the morning of July 13th regarding her inability to come to work, he said that he told her to call one of the store managers named Stoney Harris. (*Id.* at 19–20.)

discrimination claims in the light most favorable to her. Based on that review, the Court finds that Plaintiffs did not produce sufficient evidence of pretext or other circumstantial evidence to create a jury question as to whether Defendant's proffered business reasons for initiating Robertson's disciplinary actions were unworthy of credence—either because of probative evidence undermining the reasons offered or other relevant evidence of discriminatory motive. *Reeves*, 530 U.S. at 147–48, 120 S.Ct. 2097. The Court reviews below the principal other pieces of evidence tendered in support of Robertson's discrimination claim.

Plaintiffs pointed to prior misconduct by Davis and other managers and the mishandling of Robertson's internal complaint about Davis as evidence of Defendant not taking its Title VII obligations seriously—and therefore as evidence of pretext. (Doc. 45 at 20.) In particular, Plaintiffs note that another employee had previously filed an EEOC complaint against Davis for sex discrimination and harassment based on Davis poking a feather duster at the employee's rear end. (Davis Depo., Doc. 43–12 at 24–25.) As a result, Davis was required to attend training on the company's anti-discrimination and anti-harassment policies, but he was not disciplined further. (*Id.* at 27–30.) Plaintiffs also contend that Defendant mishandled Robertson's internal discrimination complaint about Davis in this case because Buchanan, the area supervisor, did not discipline Davis but merely told him not to behave like that again. (*Id.* at 48.) Robertson further testified that, when she asked Collins if she was going to get an apology for Davis's comments made to her, Collins said yes but told her to ask Davis for one. (Robertson Depo., Doc. 43–8 at 36–37.) Finally, Plaintiffs point to two discriminatory comments made by other managers in the workplace at unidentified times. Hart testified that one manager said he would go on top of a mountain and start shooting black people if Barack Obama was re-elected as president. (Hart Depo., Doc. 43–6 at 67.) Hart further testified that another manager made a racist comment to an employee, and afterward, the manager merely gave the employee a gift card as an apology. (*Id.* at 76.)

Some of these facts, if true, do suggest that discrimination issues were not taken seriously at the store by management. But the evidence is not specifically probative of whether Defendant's reasons for taking the particular disciplinary actions here were a cloak for race discrimination. For one, the prior EEOC complaint against Davis alleged that he engaged in sexual harassment. Plaintiffs do not show how this complaint is connected to Davis's race discrimination in any way. Similarly, Robertson does not show how Buchanan's failure to discipline Davis relates to her claims since Buchanan was not the decision-maker for either of the disciplinary actions taken against her. Robertson's testimony that Collins told her to ask Davis for an apology is more relevant, since Collins ultimately decided to fire Robertson and this evidence might go to his management mindset. But Collins's statement by itself is an isolated thread, does not contradict or undermine the business reasons provided for his termination decision, and is not enough to keep Robertson's claim alive. Furthermore, Hart's testimony about other managers' discriminatory comments is not sufficiently probative here because these comments are neither connected to the decision-makers in this case, Davis and Collins, nor do they show that Defendant knew about these comments or when exactly these comments occurred

relative to the sequence of events in this case.

In sum, other than Davis's offensive remarks, no probative concrete evidence was tendered that creates a jury issue by virtue of showing "weaknesses or implausibilities in the employer's proffered legitimate reasons for its actions sufficient for a reasonable factfinder to disbelieve the reasons." *Rioux*, 520 F.3d at 1278. Specifically, Plaintiffs did not provide probative evidence showing that Davis's reasons for suspending Robertson, or Collins's reasons for firing her, were implausible or not worthy of belief. Nor did they show how the record evidence created a genuine issue of material fact as to intent or pretext, based on the nature of the reasons offered and in combination with other circumstantial evidence. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097; *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (stating that the plaintiff may demonstrate that the proffered reason was not the true reason for the employment decision by either directly "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence") (citation and quotation omitted). Even if the Court discounts the three-day suspension from Robertson's disciplinary record due to the circumstances surrounding it, she could still have been properly subject to termination on July 14, 2014 based on her prior May 21st warning.

Davis's racist and sexist comments, as fully relayed by Robertson, are offensive and objectionable. Due to their timing, they establish a prima facie inference of discrimination at the outset regarding her suspension. They are also relevant in the assessment of her termination claim and bear on Hart's claims. But alone, these comments under the facts here do not carry the case to establish pretext or create a triable question for the jury as to whether Defendant's disciplining or firing of Robertson constituted race discrimination. Accordingly, the Court ultimately agrees with and adopts the Magistrate Judge's recommendation that summary judgment should be granted on Robertson's discrimination claim.

## C. Hart's Discrimination Claim

Hart's race discrimination claim relies on a traditional *McDonnell Douglas* comparator paradigm of proof, in conjunction with other relevant additional circumstantial evidence, to prove the existence of triable jury issues as to his race discrimination claim. *Reeves*, 530 U.S. at 143–150, 120 S.Ct. 2097.

The Court has reviewed the record de novo in light of Hart's objections that the Magistrate Judge improperly weighed the evidence in concluding that he and Dover engaged in distinguishable insubordinate conduct, were terminated by different managers, and thus cannot be deemed proper comparators. Specifically, Plaintiffs argue that they presented evidence that Dover is a valid comparator for Hart and that this evidence is sufficient to establish both his prima facie of discrimination and pretext. Hart points to these facts:

- Both Hart and Dover were meat cutters who were co-workers in the meat department at the same store.

- Both Hart and Dover had similar reported incidents of insubordination. Collins was the final decision-maker for both employees as to whether or

not they were ultimately fired for insubordination or allowed to return to work.

- Collins terminated Hart for insubordination, whereas he allowed Dover to return to work on two separate occasions when he had engaged in rank insubordination.

Reviewing the evidence in the light most favorable to Plaintiff, the Court agrees that Dover is a proper comparator here. There is sufficient evidence to indicate Collins was the ultimate decision-maker as to the disciplinary sanction imposed for each employee's incidents of insubordination. The employees' alleged insubordinate conduct was also sufficiently similar or identical to render Dover a proper comparator.

The record reflects that Dover had at least two reported incidents of insubordination. In one incident around spring of 2013, Dover argued with Davis about a rule that required employees to purchase store items in the presence of a manager. (Davis Depo., Doc. 43–12 at 21–22; Hart Declaration, Doc. 45–5 at 5.) Davis testified that Dover "was raising his voice and yelling" and that Dover said he was not going to comply with the rule on employee purchases. (Davis Depo., Doc. 43–12 at 23.) Hart also testified that this exchange was "heated." (Hart Declaration, Doc. 45–5 at

5.) Davis responded by directing him to clock out and sending him home. (Davis Depo., Doc. 43–12 at 23.) Dover submitted a statement to Human Resources regarding this incident, where he said that he called Collins after he was sent home, and Collins told him he could return to work in the morning.[12] (Dover Statement, Doc. 43–16 at 60.) Collins testified that he recalled this conversation with Dover, and that Dover had told him he "got into it with [Davis] and [ ] he screwed up ...." (Collins Depo., Doc. 43–15 at 165–66.) Collins said he did not remember whether he allowed Dover to return to work the next day. (*Id.* at 166.) Reviewing the evidence in the light most favorable to Hart, the Court finds there is sufficient evidence to show that Collins knew about Dover being insubordinate toward Davis by heatedly arguing with him in an insubordinate manner about company rules and that Collins nevertheless made the decision to allow Dover to return to work the next day.

In the later incident occurring around winter of 2013, Plaintiffs rely on Hart's testimony about his observations of Dover's conduct and Dover's subsequent treatment. Hart testified as follows: Davis went to the meat department one day and told the employees that customers had complained about employees cussing in the meat department. (Hart Depo., Doc. 43–6

---

12. While Dover's statement is an unsworn statement, it appears to have been maintained by Defendant in the regular course of handling human resources disputes for its business. Counsel for Defendant represented to the Court that Defendant obtained this statement from Dover's personnel file and produced it to Plaintiffs as part of discovery. (Email from Rod Meadows to Court Chambers, dated February 28, 2017.) Defendant's Human Resources Director, JoAnn Chapman, also testified in her deposition that she believed the statement was obtained regarding an issue involving employees making pur-

chases while they were on the clock at work. (Chapman Depo., Doc. 43–11 at 41–42, 44–46.) Based on these representations, the Court finds that Defendant may be able to present this statement in a form that is admissible as non-hearsay, by showing that it is record of regularly conducted activity by Defendant. Fed. R. Evid. 803(6). *See also Macuba v. Deboer*, 193 F.3d 1316, 1324–25 (1999) (finding that inadmissible hearsay evidence may be considered at the summary judgment stage only if the hearsay statements would be "reducible to admissible form" at trial).

at 66.) Davis addressed Dover specifically and said he had heard Dover's voice while he was out on the sales floor. (*Id.*) Davis said to Dover, "Now, if you cuss one more time, I am going to fire you." (*Id.*) Dover replied something to the effect of, "Shit, fuck, damn, there you go all you want." (*Id.* at 66, 84.) Davis then fired Dover on the spot. (*Id.* at 66.)

After work that same day, Hart went to get drinks with Dover. (*Id.* at 84.) He told Dover "that was messed up" in reference to Dover's earlier incident with Davis. Dover told him he wasn't worried about it. (*Id.*) Hart further testified that Dover told him it wasn't an issue because Dover had spoken with Collins, and Collins said not to worry about Davis having fired him—that he could come back to work "despite that incident." (*Id.*) Hart observed Dover back at work the following day. (*Id.*)

The Court notes that Hart's testimony about Collins's statements to Dover (i.e., Collins telling Dover not to worry about Davis firing him and that Dover could return to work) is double hearsay and will not be considered.[13] Even without considering this double hearsay testimony, the Court still finds that the remainder of Hart's testimony about Dover's second incident of insubordination and return to work the next day provides evidence supportive of Hart's discrimination claim. Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds

that a jury could reasonably infer that Dover contacted Collins once again to ask to return to work, and that Collins again approved his return the following day, even though Dover had engaged in overt, hostile insubordination and willful violation of a work rule.

Overall, the two incidents of Dover's insubordination bear sufficiently close and nearly identical characteristics to Hart's conduct to render Dover a proper comparator. This is more forcefully evident if the Court assesses the evidence in the light most favorable to Hart regarding what actually happened during his interaction with Collins on the day he was discharged. The Magistrate Judge found that Dover's conduct and Hart's conduct were not "nearly identical" because Hart's incident "escalated to physical shoving, pushing, or blocking another's path." (Doc. 57 at 41.) But the Court finds that the evidence of their interaction is clearly disputed.

Hart's encounter with Collins followed in the wake of Davis's disciplinary expulsion of Robertson from the store that day and his allegedly charged racist and sexist remarks to Robertson. Collins had gone to the store to follow up about the incident between Davis and Robertson. He did so after Robertson called him and his higher level manager, Allen Buchanan, from her car parked outside the store after she left. According to Hart, when Collins came into the store, Collins overheard him talking

---

13. The first level of hearsay is Collins's statements to Dover, and the second level of hearsay is Dover's statements to Hart. Under Fed. R. Civ. P. 56(c), parties are required to present evidence in a form that would be admissible at trial, and this double hearsay would be inadmissible unless each level of hearsay fit into an exception or exclusion to the hearsay rule. *See* Fed.R. Evid. 805. The first level of hearsay, Collins's statements to Dover, would be admissible as an opposing party's state-

ments under Fed. R. Evid. 801(d)(2). However, the second level of hearsay, Dover's statements to Hart about what Collins said, would not be admissible because they do not fit into any hearsay exception or exclusion. Thus, the Court does not consider this specific piece of evidence: Hart's testimony that Dover told him he spoke with Collins, and Collins told Dover not to worry about the incident with Davis and that he could return to work the next day.

about Robertson's incident and the current employment situation with another employee. Collins then asked Hart what he and his coworker were talking about. Hart testified that he was explaining to Collins about the unfair treatment of employees at work when Collins told him to shut up. Hart explained:

> After he told me to shut up the first time, I was definitely shocked, but he was the one that asked me to tell him what I was talking about with someone else, so I couldn't understand why he would ask me a question then tell me to shut up when I started answering. So when he first told me to shut up I responded back to try and figure out what was going on. I was trying to give him an example of what I was talking about with the unfair treatment and all, like how he didn't have to tell me to shut up, he didn't have to speak to me like that, he could have shown me some more respect because shut up wasn't really even called for. We were just having a conversation. Nobody was loud or angry, but he seemed like he was trying to escalate it when he said shut up.

(Hart Declaration, Doc. 45–5 at 4.) Hart said he tried to walk away to avoid the discussion getting escalated, but Collins

pushed him back. (*Id.*) Hart tried to walk away again, and Collins put his arm up to block his path. Collins then fired Hart. (Hart Depo., Doc. 43–6 at 46.)

Collins disputes this version of the facts and states that Hart was the one who was aggressive—"verbally aggressive," yelling, and then "somewhat physically as he approached me"—as Hart attempted to return to work. (Collins Depo., Doc. 43–15 at 28–32.) But Collins agrees that he put his arm out to keep Hart from returning work, and he states that he blocked Hart because Hart had been screaming at him. (*Id.* at 32.) Collins further states that putting his arm out had nothing to do with Hart being violent towards him or with Collins being scared, and he did so simply to keep Hart from going back to work. (*Id.*)[14]

Construed in the light most favorable to the Plaintiff, Hart did not act aggressively but was instead vocally explaining his concerns about unfair treatment and the way managers were enforcing the rules. This conduct would be nearly identical to, if not less egregious than, Dover's incidents of insubordination. This is especially true since Hart apparently had no disciplinary or attendance problems in his record while Dover had a far spottier record, including bouts of absenteeism and job abandon-

---

**14.** While Hart gave conflicting testimony about whether or not Collins asked him to apologize during their interaction on May 10th (Hart Depo., Doc. 43–6 at 50, 85), Hart testified that Collins never offered him the opportunity to return to work if he apologized. (*Id.* at 85.) Moreover, Collins testified that he never in fact asked Hart to apologize. (Collins Depo., Doc. 43–15 at 133–34.) The only evidence that Collins told Hart he could return to work if he apologized is an unsworn statement from another manager, Werline Paul. (Doc. 43–16 at 32.) This statement is disputed by Hart himself. The Court views the

evidence in the light most favorable to Plaintiffs, so the Court proceeds on the basis that Collins never told Hart he could return to work if he apologized. Relatedly, there is no evidence that Dover ever apologized to Collins in order to get his job back. In Dover's statement about the first incident of insubordination, he simply says that he called Collins to tell him what had happened. (Dover Statement, Doc. 43–16 at 60.) As for Dover's second incident of insubordination, Hart testified that Dover did the same thing—he called Collins to tell him what happened.

ment. (Collins Depo., Doc. 43–15 at 166–67). Yet Collins allowed Dover to stay on.

Based on the Dover comparator evidence, the Court finds that Hart has established a prima facie case of race discrimination and that this evidence may also properly be considered in evaluating whether Defendant's proffer of reasons for terminating him were pretextual. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Additionally, the Court considers that the circumstances surrounding Hart's incident of insubordination are tinged by the earlier events of the day and the hubbub created by Robertson's complaint to management that Davis had uttered racial, sexist slurs in sending her home. Genuine material factual disputes are created by the comparator evidence and the overall circumstantial evidence discussed above: Was Collins's explanation for his decision to terminate Plaintiff false or not worthy of belief, based on the circumstantial evidence submitted and his decision once (or even twice) to allow Dover to return immediately to work after serious incidents of insubordination? Was Plaintiff's conduct comparable to Dover's insubordination incidents? What, if any, inferences may reasonably be drawn in light of the entire sequence of events at the store on May 10, 2014? Does the evidence as a whole indicate that Hart was discharged based upon his race or not? A reasonable jury could find for either party based upon the evidence in the record. For all of these reasons, the Court **DECLINES TO ADOPT** the Magistrate Judge's recommendation to grant summary judgment on Hart's discrimination claim.

## C. Robertson's Retaliation Claim

 Upon considering all of the evidence, the Court agrees with the Magistrate Judge's finding that Robertson has not sufficiently shown that Defendant retaliated in firing her based on her protected activity under Title VII. Robertson argues that, before Collins fired her on July 14, 2014, he was on notice of her EEOC charge filed on July 10, 2014. She cites to the testimony of JoAnn Chapman, Defendant's Human Resources Director, as support for this argument. (Chapman Depo., Doc. 43–10 at 57–60.) However, Chapman testified that she would have received Robertson's EEOC charge in the mail no earlier than lunchtime on July 14th, and she might not have looked at it until later that day or the following day. (*Id.* at 64.) She also testified that she contacted Collins about the EEOC charge after she had reviewed it. (*Id.* at 61.) Furthermore, Robertson's timesheet shows that she clocked out of work for the final time on July 14th at 8:46 A.M. (Chapman Declaration, Doc. 43–2 at 5.) The timesheet shows that Robertson was fired sometime before 8:46 A.M., which would have been before Chapman had even received the EEOC charge in the mail. The timing of this evidence simply does not provide a factual basis for Robertson's retaliation claim founded on Defendant's receipt of the EEOC charge.

Plaintiffs solely rely on Chapman's testimony to contradict this timing evidence. Chapman was asked if Robertson was still an employee at the time Chapman received the EEOC charge, and Chapman said, "I don't know." (Chapman Depo., Doc. 43–10 at 62.) When pressed on this point, she repeated, "I don't know. I mean I'm under the assumption she was, yes." (*Id.* at 62–63.) Chapman's statements about her lack of knowledge and bare assumptions on this point do not place the other timing evidence in dispute.

The Court also agrees with the Magistrate Judge's finding that Robertson's in-

ternal complaints to management about the May 10th incident do not support a retaliation claim. After Robertson complained about the incident, but before she was fired on July 14th, she received a warning on or around May 21st based on her unauthorized May 18th absence that her next attendance violation would result in suspension or termination. This "intervening factor" dispels the inference of retaliation on July 14th created by the temporal proximity of her July 14th termination to her May 10th complaint to management about Davis's alleged racist and sexist remarks and action. Specifically, the May 21st attendance and discipline warning establishes a non-discriminatory reason that directly bears on Robertson's later discharge based on her repeated violation of the company's attendance rules. In turn, Robertson does not offer evidence to rebut this point or to otherwise show that Defendant's stated reasons for firing Robertson were pretextual.

For these reasons, the Court adopts the Magistrate Judge's recommendation to grant summary judgment on Robertson's retaliation claim.

### D. Hart's Retaliation Claim

■ The Court has considered all of the evidence regarding Hart's retaliation claim and once again agrees with the Magistrate Judge's recommendation. Plaintiff has not offered sufficient evidence that Defendant engaged in protected activity opposing race discrimination or that he was fired in retaliation for it, although he clearly did voice his concerns about employees' unfair treatment on May 10th.

Plaintiff Hart argues that Hart participated in two forms of protected activity—signing a statement for Robertson's EEOC charge and complaining in front of Collins about Davis's treatment of Robertson. But the Magistrate Judge correctly found that neither of these activities was so clearly linked to *race* discrimination to create a sufficient evidentiary basis for his retaliation claim. The signed statement complained that Davis called Robertson a "little bitch," but it did not refer to race in any way or imply that the complaint related to *race* discrimination.[15] (Doc. 43–16 at 36.) Similarly, Hart's comments in front of Collins on May 10th did not refer to race or race discrimination, though he complained about managers having different sets of rules, treating employees differently, and not speaking to employees respectfully. (Hart Depo., Doc. 43–6 at 45; Hart Declaration, Doc. 45–5 at 3–4.) The Court pragmatically recognizes the basis of Hart's argument. However, it agrees with the Magistrate Judge's analysis that the evidence remains insufficient as a matter of law for the Court to conclude that Hart was terminated based on his having engaged in any protected activity under the statute.

The Court therefore **ADOPTS** the Magistrate Judge's recommendation to grant summary judgment on Hart's retaliation claim.

## VI. CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART and DECLINES TO ADOPT IN PART** the Magistrate Judge's Report and Recommendation [Doc. 57].

15. Hart testified that he only heard part of the comments Davis made to Robertson on May 10th. He said, "I don't know what was said before [Davis and Robertson] got to the meat room, but I heard Rick Davis refer to Yolanda as a bitch and he told Tony Walker that she needed to go home." (Hart Declaration, Doc. 45–5 at 4.)

The Court hereby **GRANTS** Defendant's Motion for Summary Judgment [Doc. 43] on Robertson's discrimination and retaliation claims. The Court **DENIES** Defendant's Motion for Summary Judgment [Doc. 43] on Hart's discrimination claim. The Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 43] on Hart's retaliation claim.

The Court **DIRECTS** the parties to engage in private mediation and complete such mediation within 45 days of the date of this Order. In the event the parties do not reach a resolution of the remaining claims, they are **DIRECTED** to file the consolidated pretrial order in this case within 20 days of the completion date of the mediation.

This case is **ADMINISTRATIVELY CLOSED** [16] pending completion of the mediation and submission of the proposed pretrial order. The Clerk is **DIRECTED** to re-open the case if the parties submit a proposed pretrial order. If the parties resolve this case, they are **DIRECTED** to file a stipulation of dismissal.

**IT IS SO ORDERED** this 31st day of March, 2017.

---

16. Administrative closure of a case is a docket control device used by the Court for statistical purposes. Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner. The parties may move to re-open an administratively closed case at any time.